**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------- X

JENNIFER CRESPO, AMY CRESPO, MAYRA CRESPO,
and ANGEL CRESPO,

|                                            Plaintiffs,

-against-

THE CITY OF NEW YORK, a municipal entity; NEW
YORK CITY POLICE DEPARTMENT ("NYPD") Police
Officer LAURENE BOVE, Shield # 12073; NYPD Police
Officer JOSEPH IERACI, Shield # 21610; NYPD Police
Officer ZACHARY CULLEN; NYPD Police Officer
ANGELO PIROZZI, Shield # 15197; NYPD Police Officers
"JOHN and/or JANE DOES Nos. 1, 2, 3, etc., in their
individual capacities,

|                                            Defendants.

--------------------------------------------------------------------------- X

**Docket No. 22-CV-2693
(BMC)**

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiffs Jennifer Crespo, Amy Crespo, Mayra Crespo, and Angel Crespo (collectively

"Plaintiffs"), by their attorneys, Beldock Levine & Hoffman LLP, as and for their complaint

against the Defendants named above allege as follows:

**PRELIMINARY STATEMENT**

1.      "Police search and seizure—especially of homes—represents one of the most invasive

forms of intrusion of individual liberty. When conducted without proper constitutional authority, home

searches are one of the most serious violations of privacy and, consequently, types of police misconduct

that engender anger and distrust of police authority."[1] This is a civil rights action in which Plaintiffs seek

relief for this "most serious" type of police misconduct. After violating the sanctity of Plaintiffs' home by

unlawfully entering it to arrest Angel Crespo, Defendants assaulted each of the Plaintiffs, and then arrested

---

[1] Crossing the Threshold: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD
from January 2010 to October 2015, published by the New York City Civilian Complaint Review Board, available
at: chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/http://www.nyc.gov/html/ccrb/downloads/pdf/Crossing-
the-Threshold-2010-2015.pdf

Jennifer and Amy Crespo in retaliation for protesting the Defendants' unlawful actions. Plaintiffs now seeks redress pursuant to 42 U.S.C. § 1983 and New York State law for the injuries caused by Defendants unconstitutional conduct.

2.      Plaintiff seeks (i) compensatory damages for physical injury, psychological and emotional distress, and financial loss caused by the illegal actions of the Defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorneys' fees, as this Court deems equitable and just.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of Plaintiffs' constitutional and civil rights.

4.      Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

## VENUE

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York, the judicial district in which the claims arose.

## JURY DEMAND

6.      Pursuant to the Seventh Amendment of the United States Constitution, Plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

7.      Plaintiff Jennifer Crespo ("Jennifer") is a citizen of the United States who was at all times relevant to this complaint a resident of Richmond County in the State of New York.

8.      Plaintiff Amy Crespo ("Amy") is a citizen of the United States who was at all times relevant to this complaint a resident of Richmond County in the State of New York.

9.     Plaintiff Mayra Crespo ("Mayra") is a citizen of the United States who was at all times relevant to this complaint a resident of Richmond County in the State of New York.

10.    Plaintiff Angel Crespo ("Angel") is a citizen of the United States who was at all times relevant to this complaint a resident of Richmond County in the State of New York.

11.    Defendant City of New York is a municipal corporation created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department and does maintain the NYPD which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

12.    Defendant Police Officer Laurene Bove ("P.O. Bove") was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, acting under color of state law and in her individual capacity within the scope of her employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. P.O. Bove is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.  P.O. Bove is being sued in her individual capacity under 42 U.S.C.§ 1983 and New York State Law.

13.    Defendant Police Officer Joseph Ieraci (":P.O. Ieraci") was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, acting under color of state law and in his individual capacity within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. P.O. Ieraci is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.  P.O. Ieraci is being sued in his individual capacity under 42 U.S.C.§ 1983 and New York State Law.

14.     Defendant Police Officer Zachary Cullen ("P.O. Cullen") was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, acting under color of state law and in his individual capacity within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. P.O. Cullen is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.  P.O. Cullen is being sued in his individual capacity under 42 U.S.C.§ 1983 and New York State Law.

15.     Defendant Police Officer Angelo Pirozzi ("P.O. Pirozzi") was at all times relevant to this Complaint a duly appointed and acting Police Officer of the NYPD, acting under color of state law and in his individual capacity within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York. P.O. Pirozzi is entitled to indemnification under New York General Municipal Law Section 50-k and by contract.  P.O. Pirozzi is being sued in his individual capacity under 42 U.S.C.§ 1983 and New York State Law.

16.     Defendants "John and/or Jane Does" Nos. 1, 2, 3, etc. ("P.O. Does"), whose actual names plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those other officers, detectives, supervisors, and/or other agents, and employees of the NYPD, acting under color of law and in their individual capacities within the scope of employment or agency pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the State of New York, who participated in the misconduct described herein.  They are entitled to indemnification under New York General Municipal Law Section 50-k and by contract.  They are sued in their individual capacities under 42 U.S.C.§ 1983 and New York State Law.

## STATEMENT OF FACTS

17.     In 2019, Angel and Mayra Crespo resided with their son and two daughters, Christopher, Jennifer, and Amy, in a single-family private home that they had owned for approximately thirteen years in Staten Island, New York.

18.     Angel was self-employed and ran his own business while Mayra was unemployed.

19.     Jennifer Crespo was twenty-five years old at the time and pursuing a degree in nursing at Kingsborough Community College.

20.     Amy Crespo was sixteen years old and attending high school.

21.     On May 9, 2019, at approximately 3:00 p.m., Angel and Mayra Crespo were alone at their home when they had a dispute.

22.     As a result of the dispute, Angel got in his car and drove away from his home.

23.     After he left, Angel decided that he would spend the night at his mother's home and returned to his home to retrieve some clothes, his laptop, and some work papers that he needed.

24.     At approximately 3:30 p.m., Mayra called 911.

25.     At approximately 4:00 p.m., Jennifer Crespo arrived home from her nursing program.

26.     Jennifer went inside the house and saw Angel packing up some of his clothes.

27.     Angel told Jennifer that he was getting his things to go and stay somewhere else.

28.     At some point, Amy Crespo arrived home from high school and went to her room.

29.     At approximately 4:10 p.m., Defendants P.O. Bove, P.O. Ieraci, P.O. Cullen, P.O. Pirozzi, and P.O. Does (collectively "the individual NYPD Defendants") arrived at the Crespo residence and knocked on the Crespo's door.

30.     The individual NYPD Defendants were greeted by Mayra, who came outside of the house and closed the door behind her.

31.     Mayra explained to individual NYPD Defendants that she had called 911 after having a dispute with Angel.

32.     Mayra clearly told individual NYPD Defendants that she did not want Angel arrested.

33.     Jennifer came outside the house and joined the conversation between Mayra and individual NYPD Defendants.

34.     After Mayra again told individual NYPD Defendants that she did not want Angel arrested, Jennifer told individual NYPD Defendants that she had just spoken to Angel and that Angel was going to leave the house.

35.     Jennifer went inside the house to get Angel.

36.     Angel came outside the house to speak to the police officers.

37.     P.O. Bove told Angel that Mayra did not want him coming back to the house and asked him if he had anywhere to go.

38.     Angel told P.O. Bove that he had a place to stay and that he was going to go and stay at that place.

39.     Angel told the individual NYPD Defendants, "I'm leaving. It's not a problem."

40.     Angel re-entered the house to finish collecting his belongings.

41.     According to NYPD procedures, unless there is probable cause to believe the subject of a family offense committed a felony, a uniformed member of the service is not required to arrest that subject when the complainant of the family offense specifically states on his or her own initiative that he or she does not want the subject arrested.

42.     According to NYPD procedures, if there is not probable cause to believe a felony was committed and the complainant of the family offense states on his or her own initiative that he or she does not want the subject arrested, the uniformed member of the service retains the discretion to arrest the subject of the family offense complaint after considering "the prevention of further violence and the safety of <u>ALL</u> household members."[2]

43.     In accordance with NYPD procedure, P.O. Pirozzi told P.O. Bove to write up a domestic incident report and to have Mayra write down that she did not want to have Angel arrested.

44.     P.O. Bove responded, "I say fuck it. I want to collar him  . . ."

45.     P.O. Bove desire to arrest Angel despite Mayra's explicit request not to arrest him was not based on considerations of preventing further violence and ensuring the safety of the Crespo household members.

46.     P.O. Bove was required to, but did not, consider the fact that there was no history of arrests, incidents, or injuries between Angel and Mayra.

47.     P.O. Bove was required to, but did not, consider the fact that Angel had told the police that he would leave the house and had not made any statements expressing self-harm or violence to others.

48.     P.O. Bove was required to, but did not, consider the fact that Angel did not have access to weapons or threaten the use of weapons.

49.     P.O. Bove was required to, but did not, consider the fact that Angel did not appear to be under the influence of drugs or alcohol, that his physical and mental state was reasonable.

---

[2] NYPD Patrol Guide Procedure No. 208-36, "Family Offense/Domestic Violence," at page 7 at "NOTE" (emphasis in original).

50.     P.O. Bove also did not consider the fact that Angel had agreed to leave the house, that doing so was not a problem, and that there were no indications of any risk to Mayra, Jennifer, or Amy if Angel was not arrested.

51.     P.O. Bove's desire to arrest Angel was arbitrary, unreasonable, and entirely failed to consider the well-being of the Crespo family.

52.     Even though P.O. Bove's desire to arrest Angel was arbitrary, unreasonable, and failed to consider factors required by NYPD procedures, P.O. Pirozzi told P.O. Bove, "You can do that too."

53.     Mayra continued to tell the individual officers that she did not want Angel to be arrested.

54.     Mayra also told the officers that she would be willing to leave the house rather than have Angel arrested.

55.     Still, individual NYPD Defendants made false statements to Mayra concerning their obligation to arrest Angel.

56.     P.O. Pirozzi falsely told Mayra, "Listen, unfortunately you called us and there are certain things we can and can't do."

57.     P.O. Pirozzi also falsely told Mayra, "Listen. You called 911 and you're telling us what he did. You kind of put us in a spot. Now we gotta do our job."

58.     When Mayra pled with them not to arrest Angel, P.O. Ieraci falsely told her, "No, that is not how this works."

59.     One of the individual NYPD Defendants falsely told Mayra, "You don't have a say now. You called us."

60.     P.O. Bove falsely told Mayra that it was not her decision.

61.     P.O. Ieraci falsely told Mayra, "Ma'm, you put us in a tough spot. We gotta do our job. Now, you can't just do that."

62.     As the police officers approached the threshold of the house, Jennifer stood in the doorway and asked Mayra if she had invited the police officers into the house.

63.     The individual NYPD Defendants unlawfully pushed Jennifer aside and falsely told Jennifer, "That isn't how this works" and intentionally violated the sanctity of the Crespo household by barging their way into their home.

64.     The individual NYPD Defendants did not have a warrant to enter Mayra's home.

65.     Mayra did not invite the individual NYPD Defendants into her home.

66.     Mayra did not consent to the individual NYPD Defendants' entry into her home.

67.     Mayra continued to plead with the individual NYPD Defendants not to arrest Angel.

68.     The individual NYPD Defendants had a duty not to enter the Crespo's house without a warrant.

69.     No exigent circumstances justified the individual Defendants' entry into the Crespo household.

70.     Upon information and belief, individual NYPD Defendants recognized that there was no urgent need to enter the Crespo household to render aid or take action because Mayra was with the police and Angel was in the process of fulfilling P.O. Bove's request for him to leave the home and stay somewhere else.

71.     The individual NYPD Defendants' forced entry into the Crespo household was objectively unreasonable.

72.     Amy Crespo came to the entrance and joined Mayra and Jennifer.

73.     After gaining unlawful entry inside the house, P.O. Ieraci walked downstairs to the living room and began yelling at Angel and making violent gestures and antagonizing comments.

74.     P.O. Ieraci screamed at Angel to "Turn around and face the wall!" and to "Turn around and face the wall or I'll put you on the fucking floor!"

75.     P.O. Ieraci screamed at Angel, "You wanna go for it? Alright, let's fucking go! Don't fucking start with me!"

76.     P.O. Ieraci then put his fist up and began bobbing and weaving like a boxer while jabbing his fingers into Angel's chest and continuing to yell antagonizing statements.

77.     Mayra, Jennifer, and Amy were horrified by the individual NYPD Defendants' unlawful entry into their home and P.O. Ieraci's unjustified threats toward Angel.

78.     Mayra, Jennifer, and Angel rushed downstairs and stood between Angel and P.O. Ieraci to protect Angel and deescalate the dangerous situation the individual NYPD Defendants had unlawfully created.

79.     Mayra, Jennifer, and Amy, cried out for the police officers to stop P.O. Ieraci.

80.     P.O. Ieraci screamed, "That's not how this works! That is not how this works!"

81.     Instead of de-escalating the situation or stopping P.O. Ieraci's unlawful conduct, the individual NYPD Defendants compounded their misconduct by assaulting the entire Crespo family.

82.     Mayra, Jennifer, and Amy were grabbed, punched, hit, and thrown around by the individual NYPD Defendants.

83.     The individual NYPD Defendants assaulted Angel and threw him to the ground.

84.     Without warning, P.O. Bove pulled her taser out and attempted to tase Angel in the chest.

85.     Mayra and Jennifer, who had both studied nursing, told the individual NYPD Defendants not to tase Angel because he had high blood pressure.

86.     The individual NYPD Defendants responded by yelling that they did not "fucking care."

87.     While Angel was lying on the ground, facedown, the individual NYPD Defendants continued to tase him several times.

88.     Police officers assaulted Mayra, Jennifer, and Amy as they continued to yell at them violently and chaotically.

89.     P.O. Bove violently punched Mayra in the stomach, knocking her over and causing Mayra great pain.

90.     The individual NYPD Defendants eventually ceased assaulting Plaintiffs.

91.     After Angel was handcuffed, P.O. Bove said to the other individual NYPD Defendants that she wanted Jennifer and Mayra arrested.

92.     There was no probable cause to arrest Jennifer or Amy, who had committed no crime or wrongdoing.

93.     Jennifer and Amy were taken into custody even though there was no probable cause to believe they were guilty of any offense.

94.     P.O. Ieraci falsely told a police supervisor and, upon information and belief, prosecutors that Jennifer and Amy had swung at him to justify false charges being lodged against him.

95.     Jennifer and Amy were falsely charged with obstructing governmental administration for interfering with the arrest of Angel even though the individual NYPD

Defendants knew the warrantless arrest of Angel in his home was unlawful and that Jennifer and Amy had not interfered with any lawful police conduct.

96.     Jennifer and Amy were also falsely charged with resisting arrest even thought the individual NYPD Defendants knew that Jennifer and Amy did not resist a lawful arrest.

97.     Jennifer and Amy were brought to the 122nd Precinct where their arrests were processed.

98.     Jennifer was transferred to Richmond County Central Booking and the Richmond County Supreme Court. She was incarcerated for approximately twelve hours in custody.

99.     Amy was transferred to a juvenile center, and was eventually returned home after spending approximately twelve hours in custody.

100.    All criminal charges against them were dismissed.

## CAUSES OF ACTION

## FEDERAL LAW CLAIMS

### COUNT I
**4th Amendment Unlawful Entry of Home Pursuant to 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

101.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

102.    The individual NYPD Defendants, acting individually and in concert, deprived Plaintiffs of their clearly established right under the Fourth Amendment, to be secure in their home from unreasonable invasion by the government.

103.    Specifically, the individual NYPD Defendants, thrust themselves into Plaintiffs' home without Plaintiffs' consent, without a warrant, and when no exigent circumstances justified the warrantless home invasion.

104.    The individual NYPD Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard and deliberate indifference to Plaintiffs' clearly established constitutional rights.  No reasonable officer in 2019 would have believed this conduct was lawful.

105.    As a direct and proximate result of these Defendants' actions, the sanctity of Plaintiffs' home was violated and Plaintiffs suffered the other continuing damages and injuries set forth above.

## COUNT II
### 4th Amendment Unlawful Seizure in the Home Pursuant to 42 U.S.C. § 1983
*(Against the Individual NYPD Defendants)*

106.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

107.    The individual NYPD Defendants, acting individually and in concert, deprived Angel Crespo of his clearly established right under the Fourth Amendment, to be free from unreasonable seizure in his home by the government.

108.    Specifically, the individual NYPD Defendants, thrust themselves into Plaintiffs' home and arrested Angel without a warrant, without consent to enter the Crespo household, and when no exigent circumstances existed to justify the warrantless arrest.

109.    The individual NYPD Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard and deliberate indifference to Angel Crespo's clearly established constitutional rights.  No reasonable officer in 2019 would have believed this conduct was lawful.

110.    As a direct and proximate result of these Defendants' actions, Angel Crespo suffered the other continuing damages and injuries set forth above.

<u>**COUNT III**</u>
**4th Amendment Excessive Force Pursuant to 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

111.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

112.    The individual NYPD Defendants, acting individually and in concert, deprived Plaintiffs of their clearly established right under the Fourth Amendment, to be free from excessive use of force by the government

113.    Specifically, the individual NYPD Defendants, employed excessive force against Plaintiffs by striking Plaintiffs with their fists, violently grabbing the Plaintiffs, flinging the Plaintiffs around the room, and using a taser against plaintiffs when no use of force against Plaintiffs was justified by the circumstances.

114.    The individual NYPD Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard and deliberate indifference to Plaintiffs' clearly established constitutional rights.  No reasonable officer in 2019 would have believed this conduct was lawful.

115.    As a direct and proximate result of these Defendants' actions, Plaintiffs suffered physical pain and suffering, and the other continuing damages and injuries set forth above.

<u>**COUNT IV**</u>
**4th Amendment False Arrest Pursuant to 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

116.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

117.    The individual NYPD Defendants intended to and did confine Jennifer Crespo and Amy Crespo for an extended period, of which confinement Jennifer and Amy were conscious of and did not consent to.  Jennifer's and Amy's confinement was not otherwise privileged.

118.    Specifically, the individual NYPD Defendants, acting individually and in concert with themselves, caused Jennifer and Amy to be arrested for obstructing governmental administration and resisting arrest when they knew probable cause did not exist to charge them with those purported crimes because they were based on the unlawful seizure of Angel Crespo in the Crespo household.  As a result of these defendants' actions, Jennifer and Amy were taken into custody and transported from their home to the 122nd Precinct. Jennifer was then transferred to Richmond County Central Booking and the Richmond County Supreme Court, while Amy was transferred to a juvenile center.

119.    The individual NYPD Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Jennifer's and Amy's clearly established constitutional rights.  No reasonable officer in 2019 would have believed this conduct was lawful.

120.    As a direct and proximate result of these defendants' actions, Jennifer and Amy were wrongly imprisoned for approximately one day and suffered the other continuing damages and injuries set forth above.


**COUNT V**
**4th Amendment Malicious Prosecution Pursuant to 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

121.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

122.    The individual NYPD Defendants, with malice and knowing that probable cause did not exist to arrest Jennifer and Amy Crespo and prosecute them with criminal charges stemming from the unlawful seizure of Angel Crespo in the Crespo household, acting individually and in concert, caused Jennifer and Amy to be arrested, charged, and prosecuted for those crimes, thereby violating Jennifer's and Amy's clearly established right, under the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures and to be free of prosecution absent probable cause.

123.    Specifically, these Defendants, acting individually and in concert, fabricated evidence and intentionally withheld from and misrepresented to the District Attorney exculpatory facts that vitiated probable cause against Jenifer and Amy, including, but not limited to, the fact that the purported obstruction of governmental administration that Jennifer and Amy were charged with was based on the unauthorized and unlawful arrest of Angel Crespo.

124.    These defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Jennifer's and Amy's clearly established constitutional rights.  No reasonable officer in 2019 would have believed this conduct was lawful.

125.    Jennifer and Amy are completely innocent of the criminal charges stemming from the May 9, 2019, unlawful arrest of Angel Crespo. The prosecution finally terminated favorably for Jennifer and Amy when all criminal charges against them were dismissed.

126.    As a direct and proximate result of the individual NYPD Defendants' unlawful actions, Jennifer and Amy spent approximately twelve hours wrongly imprisoned and suffered the other grievous and continuing damages and injuries set forth above.

<u>**COUNT VI**</u>
**14th Amendment Deprivation of Liberty Without Due Process of Law and**

**Denial of a Fair Trial by Fabricating Evidence and Withholding Material
Exculpatory and Impeachment Evidence Pursuant to 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

127.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

128.    The individual NYPD Defendants, acting individually and in concert, deprived Jennifer and Amy of their clearly established constitutional right to a fair trial under the Fourteenth Amendment of the United States Constitution.

129.    These defendants deprived Jennifer and Amy of their right to a fair trial by fabricating inculpatory evidence that, *inter alia*, they had attacked police officers by swinging at them.

130.    These Defendants deprived Jennifer and Amy of their right to a fair trial by withholding material exculpatory and impeachment evidence from the defense, including, but not limited to, the fact that the Defendants had unlawfully entered the Crespo household and that the purported obstruction of governmental administration that Jennifer and Amy were charged with was based on the unauthorized and unlawful arrest of Angel Crespo.

131.    These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Jennifer's and Amy's clearly established constitutional rights.  No reasonable officer in 2019 would have believed this conduct was lawful.

132.    Jennifer and Amy are completely innocent of the criminal charges stemming from the May 9, 2019, unlawful arrest of Angel Crespo. The prosecution finally terminated favorably for Jennifer and Amy when all criminal charges against them were dismissed.

133.     As a direct and proximate result of the individual NYPD Defendants' unlawful

actions, Jennifer and Amy spent approximately one day wrongly imprisoned, were forced to return

to court, and suffered the other grievous and continuing damages and injuries set forth above.

### COUNT VII
**Failure to Intercede Pursuant to 42 U.S.C. § 1983**
*(Against the Individual NYPD Defendants)*

134.     Plaintiffs hereby incorporate by reference all foregoing paragraphs and further

allege as follows:

135.     By their conduct and under color of state law, the individual NYPD Defendants had

opportunities to: intercede on behalf of Jennifer, Amy, Mayra, and Angel Crespo to prevent the

police officers unlawful entry that violated the sanctity of their home; to prevent the unlawful

seizure of Angel Crespo in his home without consent or a warrant and when exigent circumstances

to enter the Crespo home did not exist; to prevent the excessive and unlawful force used against

Jennifer, Amy, Mayra, and Angel Crespo; to prevent the false arrest, malicious prosecution, false

imprisonment, and deprivation of liberty without due process of law of Jennifer and Amy Crespo,

Despite their opportunities to intercede, the individual NYPD Defendants, due to their intentional

conduct and/or reckless or deliberate indifference, declined or refused to do so.

136.     These defendants' failures to intercede violated Jennifer's, Amy's, Mayra's, and

Angel Crespo's clearly established constitutional rights, including their right to be secure in their

home, to be free from unreasonable search and seizure, and not to be deprived of liberty without

due process of law as guaranteed by the Fourth and Fourteenth Amendments.  No reasonable police

officer in 2019 would have believed that failing to intercede to prevent these defendants from

violating Jennifer's, Amy's, Mayra's, and Angel Crespo's constitutional rights was lawful.

137.     As a direct and proximate result of these Defendants' actions, Jennifer, Amy, Mayra, and Angel Crespo suffered the grievous and continuing damages and injuries set forth above.

### NEW YORK STATE CONSTITUTIONAL CLAIMS

<u>**COUNT VIII**</u>
**New York State Constitutional Violations**
*(Against the Individual NYPD Defendants)*

138.     Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

139.     The individual NYPD Defendants' conduct breached the protections guaranteed to Plaintiffs by the New York State Constitution, including but not limited to, Article I, Secs. 6and 12, and including the following rights:

    a.   freedom from unreasonable search and seizure of their person and property;

    b.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention Plaintiffs were aware and did not consent; and

    c.   freedom from deprivation of liberty without due process of law.

140.     The deprivation of Plaintiffs' rights under the New York State Constitution resulted in the injuries and damages set forth above.

## COUNT IX

### Trespass Pursuant to New York State Law

141.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

142.    The individual NYPD Defendants issued legal process to place Amy Crespo under arrest.

143.    The individual NYPD Defendants arrested Amy Crespo in order to obtain collateral objectives outside the legitimate ends of the legal process, including, but not limited to, retaliation against Amy for protesting their unlawful conduct and to cover up their harassment and intimidation of Amy and her family.

144.    The individual NYPD Defendants acted with intent to do harm to Amy without excuse or justification.

145.    As a direct and proximate result of this unlawful conduct, Amy suffered the grievous and continuing damages and injuries set forth above.

## COUNT X

### Trespass Pursuant to New York State Law

146.    Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

147.    The City of New York, though the NYPD, owed a duty of care to Plaintiffs to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to Plaintiffs or to those in a like situation would probably result from the foregoing conduct.

148.    Upon information and belief, all the individual NYPD Defendants were unfit and incompetent for their positions.

149.     Upon information and belief, Defendant City knew or should have known through the exercise of reasonable diligence that the individual NYPD Defendants were potentially dangerous.

150.     Upon information and belief, Defendant City's negligence in screening, hiring, training, disciplining, and retaining these Defendants proximately caused each of the Plaintiffs' injuries.

151.     As a direct and proximate result of this unlawful conduct, Plaintiffs suffered the grievous and continuing damages and injuries set forth above.

**COUNT XI**
***Respondeat Superior* Claim**
(*Against Defendant City*)

152.     Plaintiffs hereby incorporate by reference all the foregoing paragraphs and further allege as follows:

153.     The Individual Defendants, and other individuals who joined with them in their wrongful conduct, were, at all times relevant to this Count, employees and agents of the City of New York. Each of those defendants and persons was acting within the scope of his or her employment, and their acts and omissions, as alleged above, are therefore directly chargeable to the City of New York under the state law doctrine of *respondeat superior*.

**WHEREFORE**, Plaintiffs Jennifer Crespo, Amy Crespo, Mayra Crespo, and Angel Crespo pray as follows:

(a)     That the Court award compensatory damages to Plaintiffs and against the Defendants, jointly and severally, in an amount to be determined at trial;

(b)     That the Court award punitive damages to Plaintiffs against all individual Defendants, in an amount to be determined at trial, that will deter such conduct by Defendants in the future;

(c)     For a trial by jury;

(d)     For pre-judgment and post-judgment interest and recovery of costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

(e)     For all other relief to which they may be entitled.

Dated: New York, New York              /s/Marc A. Cannan
       November 1, 2022                   Marc A. Cannan
                                 BELDOCK LEVINE & HOFFMAN LLP
                                 99 Park Avenue, 26th Floor
                                 New York, New York 10016
                                 (212) 490-0400
                                 *Attorneys for Plaintiffs*