Index No.  22-CV-2693 (BMC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JENNIFER CRESPO, *et al.*,

Plaintiffs,

- against -

THE CITY OF NEW YORK, *et al.*,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York, Joseph Ieraci, Angelo Pirozzi, Laurene Bove, and Zachary Cullen*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  James R. Murray*
*Tel:  (212) 356-2372*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ...........................................................................2

STANDARD OF REVIEW ..........................................................................5

POINT I

        PLAINTIFFS' CLAIMS FOR UNLAWFUL ENTRY AND "UNLAWFUL SEIZURE INSIDE THE HOME" FAIL BECAUSE EXIGENT CIRCUMSTANCES JUSTIFIED THE ENTRY .......................................................................................................5

POINT II

        THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FEDERAL CLAIMS .......................................11

POINT III

        THE COURT SHOULD DENY SUMMARY JUDGMENT ON PLAINTIFFS' REMAINING FEDERAL CLAIMS BECAUSE THE ENTRY WAS LAWFUL AND NO OFFICER INITIATED A PROSECUTION OR FABRICATED EVIDENCE ...............................................................................15

        A) There was probable cause for Jennifer and Amy Crespo's arrests. ...............................................................15

        B) Malicious Prosecution.....................................**Error! Bookmark not defined.**

        C) Jennifer and Amy Crespo are not entitled to summary judgment on their fair trial claims because no officer fabricated evidence against either of them......................................19

POINT IV

        PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR FAILURE TO INTERVENE CLAIMS .......................................................................................22

**Page**

POINT V

      THE COURT SHOULD DENY SUMMARY JUDGMENT
      ON PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS ................................23

CONCLUSION ................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                   <u>Pages</u>

*Allen v. Antal*,
    2014 U.S. Dist. LEXIS 79031
    (S.D.N.Y. Mar. 13, 2014) ................................................................24

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................5

*Anilao v. Spota*,
    27 F.4th 855 (2d Cir. 2022) ................................................19, 20, 22

*Ashanti v. City of N.Y.*,
    NYLJ LEXIS 95, *192023
    (Sup. Ct., N.Y. County, 2023) ........................................................26

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011) ....................................................................12

*Basinski v. City of N.Y.*,
    706 F. App'x 693 (2d Cir. 2017) ....................................................16

*Brosseau v. Haughen*
    543 U.S. 194, 200 (2004) ........................................................12, 13

*Brown v. City of N.Y.*,
    2015 US Dist. LEXIS 11957
    (E.D.N.Y. Feb. 2, 2015) ............................................................6, 11

*Calamia v. City of N.Y.*,
    879 F.2d 1025 (2d Cir. 1989) ........................................................15

*Debellis v. Soloman*,
    No. 19-CV-8730 (JMF),
    2022 U.S. Dist. LEXIS 56021
    (S.D.N.Y. Mar. 28, 2022) ........................................................22-23

*District of Columbia v. Wesby*,
    138 S. Ct. 577 (2018) ..................................................................12

*Donas v. City of NY*,
    2008 N.Y. Slip Op. 30241(U)
    (Sup. Ct., N.Y. County 2008) ....................................................24-25

**Cases**                                                                             **Pages**

*Dufort v. City of N.Y.*,
    874 F3d 338 (2d Cir. 2017)...........................................................................17

*Dukes v. City of N.Y.*,
    879 F. Supp. 335 (S.D.N.Y. 1995) .................................................................17

*Fulton v. Robinson*,
    289 F.3d 188 (2d Cir. 2002)..........................................................................17

*Garnett v. Undercover Officer C0039*,
    No.. 1:13-cv-7083-GHW
    2015 U.S. Dist. LEXIS 45232
    (S.D.N.Y. Apr. 6, 2015)
    Aff'd 838 F.3d 265, 275 (2d Cir. 2016)) .........................................................19

*Goldberg v. City of N.Y.*, 2021 U.S. Dist. LEXIS 188674
    (S.D.N.Y. Sep. 30, 2021)...............................................................................23

*Guan v. City of N.Y.*,
    37 F.4th 797 (2d Cir. 2022) ...........................................................................15

*Hoti Enters., L.P. v. GECMC 2007 C-1 Burnett St. LLC*,
    No. 12 Civ. 5341 (CS), 2012 U.S. Dist. LEXIS 182395
    (S.D.N.Y. Dec. 27, 2012)...............................................................................19

*Isaac v. City of N.Y.*,
    No. 16-CV-4729 (KAM), 2018 U.S. Dist. LEXIS 132995
    (E.D.N.Y. Aug. 6, 2018) ...............................................................................17

*Jenkins v. City of N.Y.*,
    478 F3d 76 (2d Cir. 2007)..............................................................................12

*Kass v. City of N.Y.*,
    864 F.3d 200 (2d Cir 2017)...........................................................................16

*Matter of Kendell R.*,
    71 AD3d 553 (1st Dept. 2010).......................................................................16

*Lichter v. Bur. of Accounts Control, Inc.*,
    2021 U.S. Dist. LEXIS 50187
    (S.D.N.Y. Mar. 17, 2021) ..........................................................................5, 18

*Lowth v. Town of Cheektowaga*,
    82 F.3d 563 (2d Cir. 1996).............................................................................17

**Cases**                                                                                          **Pages**

*Lyles v. State of N.Y.*, 2 A.D.3d 694,
    770 NYS2d 81 (2003),
    Aff'd 3 N.Y. 3d 396 (2004) ....................................................................................24

*Malley v. Briggs*,
    475 U.S. 335 (1986) ..............................................................................................11

*Manganiello v. City of N.Y.*
    612 F3d 149 (2d Cir 2010) ....................................................................................17

*Martinez v. City of Schenectady*,
    97 N.Y. 2d 78 (2001) .......................................................................................24, 25

*Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................5

*Morse v. Fusto*,
    804 F3d 538 (2d Cir. 2015) .......................................................................19, 20, 22

*Mullenix v. Luna*,
    577 U.S. 7 (2015) ..................................................................................................12

*Okin v. Vill. of Cornwall-on-Hudson Police Dep't*,
    577 F.3d 415 (2d Cir. 2009) ..................................................................................13

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ................................................................................................6

*Penree v. City of Utica*,
    2016 U.S. Dist. LEXIS 27668,
    (N.D.N.Y. Mar. 4, 2016) .........................................................................................9

*Penree v. City of Utica*,
    694 F. App'x 30 (2d Cir. 2017) ...................................................................9, 10, 13

*People v. Frye*,
    18 Cal. 4th 894, 77 Cal. Rptr. 2d 25,
    959 P. 2d 183 (1998) ........................................................... 7-8, 9, 10, 11, 14

*People v. Higgins*,
    26 Cal. App. 4th 247,
    31 Cal. Rptr. 2d 516 (1994) .............................................................8, 9, 10, 11, 14

*People v. Wilkins*, 14 Cal. App. 4th 761,
    17 Cal. Rptr. 2d 743 (1993) ....................................................................................8

**Cases**                                                                  **Pages**

*Perez v. City of N.Y.*, 2022 U.S. Dist. LEXIS 166418
   (S.D.N.Y. Sep. 14, 2022) ................................................................... 23

*Ricciuti v. N.Y.C. Transit Auth.*,
   124 F3d 123 (2d Cir. 1997) ......................................................... 19, 20

*Rohman v. N.Y.C. Transit Auth.*,
   215 F.3d 208 (2d Cir. 2000.) ............................................................ 17

*Roman v. City of Mount Vernon*,
   No. 21-CV-2214 (KMK),
   2022 U.S. Dist. LEXIS 128074
   (S.D.N.Y. July 19, 2022) ........................................................... 17-18

*Saucier v. Katz*,
   533 U.S. 194 (2001) ........................................................................ 12

*Seabrook v. Jacobson*,
   153 F.3d 70 (2d Cir. 1998) ............................................................... 26

*Smith v. City of N.Y.*,
   No. 04 Civ. 3286, 2010 U.S. Dist. LEXIS 88774,
   2010 WL 3397683
   (S.D.N.Y. Aug. 27, 2010) ................................................................ 17

*Spruill v. City of NY.*,
   2022 NY Slip. Op. 32648(U)
   (Sup. Ct., N.Y. County 2022) ......................................................... 24

*State v. Rexrode*,
   243 W. Va. 302, 844 SE2d 73 (2020) ............................................... 8

*Tennessee* v. *Garner*,
   471 U.S. 1, 105 S. Ct. 1694,
   85 L. Ed. 2d 1 (1985) ..................................................................... 12

*Thompson v. Clark*,
   2018 U.S. Dist. LEXIS 105225,
   No. 14-CV-7349
   (E.D.N.Y. June 11, 2018) ............................................................... 16

*Tierney v. Davidson*,
   133 F.3d 189 (2d Cir. 1998) .............................................................. 6

**Cases**                                                                                        **Pages**

*Torres v. City of N.Y.*,
   No. 20-CV-4007 (BMC), 2022 U.S. Dist. LEXIS 58572
   (E.D.N.Y. Mar. 30, 2022) ............................................................................7

*United States v. MacDonald*,
   916 F.2d 766 (2d Cir. 1990) .........................................................................6

*Wahad v. F.B.I.*,
   994 F. Supp. 237 (S.D.N.Y. 1998) .............................................................24

*Warren v. Uribe*,
   2013 U.S. Dist. LEXIS 76311,
   No. 2:10-CV-2120 (MCE) (EFB),
   (E.D. Cal. May 30, 2013) .............................................................................8

**Statutes**

42 U.S.C. § 1983 ................................................................................2, 24, 25, 26

Fed. R. Civ. P. 56(a) ...................................................................................5

Fed. R. Civ. P. 56.1 ...............................................................................2, 18

N.Y. Penal Law § 195.05 .............................................................................16

N.Y. Penal Law § 205.30 .............................................................................15

**Other Authorities**

N.Y.S. Constitution Article I, § 12 .........................................................1, 2, 25

N.Y.S. Constitution Article I, § 6 ...............................................................1, 25

## PRELIMINARY STATEMENT

On May 9, 2019, Officers Ieraci, Bove, Cullen, and Pirozzi entered the Crespo residence after Mayra Crespo—who had swelling under her right eye and bruising on her right shoulder—stated that her husband, Angel Crespo, had punched her in the face and shoulder and dragged her by the hair when she told him she wanted a divorce.  When the officers attempted to arrest Angel Crespo, he pushed, shoved, and grappled with them for almost three minutes as Mayra Crespo and his daughters—Amy and Jennifer Crespo—pushed and pulled the officers away from him.  Angel Crespo was ultimately arrested for assault and Jennifer and Amy Crespo were arrested for interfering with Angel's arrest.  Now, Angel, Mayra, Amy, and Jennifer Crespo claim that the officers unlawfully entered their home and used excessive force against them, Angel Crespo claims that all four officers unlawfully seized him, and Jennifer and Amy Crespo claim that all four officers falsely arrested them and that Officers Bove and Cullen maliciously prosecuted and fabricated evidence against them.  Plaintiffs also claim that all four officers failed to intervene in each other's conduct and violated Article I, §§ 6 and 12 of the New York State Constitution.

Plaintiffs now move for summary judgment on all of their claims except for their excessive force claims and their claim under Article I, § 6 of the State Constitution, which they appear to have abandoned.[1]  Plaintiffs are not entitled to summary judgment on any of these claims.  Their unlawful entry, unlawful seizure in the home, false arrest, malicious prosecution, and fair trial claims are contingent on the entry being unconstitutional, which it was not.  At a minimum, there are genuine issues of material fact as to whether the officers lawfully entered the Crespo residence under exigent circumstances, including Mayra Crespo's statements and visible injuries.  Because Plaintiffs cannot show an underlying constitutional violation, they are not entitled to summary judgment on their failure to intervene claims.  Defendants are entitled to

---

[1] On February 3, 2023, Defendants also filed their motion for summary judgment.

qualified immunity on all Plaintiffs' federal claims because their actions were objectively reasonable and it was not clearly established that the entry was unconstitutional under the circumstances presented here. Finally, Plaintiffs cannot prevail on their claims under Article I, § 12 of the New York State Constitution because they have adequate alternative remedies at common law and under § 1983. Accordingly, the Court should deny Plaintiffs' motion for summary judgment in its entirety.

### <u>STATEMENT OF FACTS[2]</u>

On May 9, 2019 Defendant Officers Bove, Ieraci, Cullen, and Pirozzi responded to an assault in progress at Plaintiffs' residence. Defendants' Responses to Plaintiffs' Local Rule 56.1 Statement of Material Facts (hereinafter "Def's 56.1 Responses") at ¶ 167). Outside the house, Plaintiff Mayra Crespo—who had swelling under her right eye, a bruise on right shoulder, and strands of hair on her shirt—stated that her husband, Angel Crespo, had punched her in the face and shoulder and dragged her by the hair after she told him she wanted a divorce. *Id.* at ¶¶ 168-169. Jennifer Crespo, one of Angel's and Mayra's daughters, exited the house and Officer Bove asked her "has this happened before with your mother?" *Id.* at ¶ 170. Jennifer did not respond and Mayra Crespo said "it happened before." *Id.* at ¶ 171. Mayra Crespo then stated that Angel Crespo had already left the house and returned before the officers arrived and had previously threatened to commit suicide if she left him. *Id.* at ¶¶ 19 and 23. Several minutes later, Angel Crespo exited the house, stated that he had "just pushed [Mayra Crespo] around," refused to show the officers his identification, and went back inside. *Id.* at ¶¶ 45, 48, 54, 55, and 58. The officers spoke with Mayra for several more minutes and then entered the Crespo home. *Id.* at ¶¶ 59-129.

---

[2] The below facts are undisputed solely for the purpose of this summary judgment opposition. Defendants reserve the right to challenge any of the below facts during subsequent stages of this litigation.

Inside the house, Angel Crespo—who weighed approximately 300 pounds—refused two orders from Officer Ieraci to face the wall, punched his right hand into the palm of his left hand, and said "let's go for it." *Id.* at ¶¶ 135-139 and 172. When the officers attempted to arrest Angel Crespo, Mayra, Jennifer, and Amy Crespo—Angel's and Mayra's other daughter—moved between Angel and the officers. *Id.* at ¶ 143. Angel Crespo walked backwards into a hallway and Jennifer Crespo stood in front of him with her back facing the officers and her hands spread across the width of the hallway. *Id.* at ¶¶ 145 and 173. Officer Ieraci pulled Amy Crespo away from Angel Crespo and moved toward the hallway. *Id.* at ¶ 174.

At that time, Jennifer Crespo stood directly in front of Angel Crespo and pushed Officer Ieraci backwards with her right arm. *Id.* at ¶ 175. After several seconds, Angel Crespo rapidly pushed past Jennifer Crespo into the common area, violently swung his arms, and pushed Mayra Crespo and Officer Bove as Officers Ieraci and Pirozzi grabbed his torso. *Id.* at ¶¶ 176-177. Amy Crespo pushed and pulled Officers Bove and Pirozzi away from Angel Crespo while screaming at them to stop. *Id.* at ¶ 178. When Angel Crespo began pushing the officers, Officer Bove deployed her taser, striking Angel with one of the prongs. *Id.* at ¶ 179. Officers Ieraci and Pirozzi grabbed Angel Crespo, who flailed his arms while screaming. *Id.* at ¶ 180. As all three individuals staggered towards the corner of the room, Jennifer Crespo grabbed Officer Pirozzi while continuously screaming. *Id.* at ¶ 181. When Angel Crespo and Officers Pirozzi and Ieraci reached the corner of the room, they fell down on top of each other. *Id.* at ¶ 182. Jennifer Crespo—who was still grabbing Officer Pirozzi as he fell—stumbled, leaned forward, and attempted to grab Officer Bove's taser. *Id.* at ¶ 183.

In the corner, Angel Crespo twisted his body, swung his arms at Officers Ieraci and Pirozzi, lowered his head while screaming, charged at Officer Ieraci, and fell to the ground. *Id.*

3

at ¶ 184.  Jennifer Crespo shrieked and sprinted toward the right side of Angel Crespo as Officer Pirozzi attempted to pull her away.  *Id.* at ¶ 185.  Jennifer Crespo swung her arms wildly and pushed Officer Pirozzi away.  *Id.* at ¶ 186.  After struggling with Jennifer Crespo for approximately 20 seconds, Officer Pirozzi pushed her backwards, onto the floor.  *Id.* at ¶ 187.  Officer Pirozzi returned to the floor, where he and Officer Ieraci handcuffed Angel Crespo.  *Id.* at ¶ 161.  Angel, Jennifer, and Amy Crespo were arrested.  *Id.* at ¶ 163.  When Officer Bove attempted to handcuff Jennifer Crespo, Jennifer flailed her arms, twisted her body, and pushed Officer Bove for over fifty seconds.  *Id.* at ¶ 188.  Officer Bove handcuffed Jennifer Crespo and Jennifer and Amy Crespo were transported to the 122nd Precinct.  *Id.* at ¶ 189.

At the precinct, Officer Bove drafted Jennifer Crespo's arrest report and Officer Cullen processed Amy Crespo's arrest report.  *Id.* at ¶ 190.  Both Jennifer and Amy Crespo's arrest reports listed resisting arrest and obstruction of governmental administration ("OGA") in the second degree as the sole charges and indicated that they were arrested inside 14 Mercer Place.  *Id.* at ¶¶ 191-192.  Amy Crespo's arrest report states that she "did intentionally shove, push and grab police officer[s] who were attempting to place 3rd party def into custody," and notes "body camera footage (Bove 926593)."  *Id.* at ¶ 193.  Noting the existence of bodycam footage, Jennifer Crespo's arrest report states that she "did intentionally shove, push and grab police officer[s] while they were attempting t[o] place 3rd party suspect into custody," and "did flail [her] arms and refuse to place hand behind her back" when she was placed under arrest. *Id.* at ¶ 194.

After drafting Jennifer Crespo's arrest report, Officer Bove submitted a "Body Worn Camera Worksheet" to the Richmond County District Attorney's Office, which stated that seven officers captured the incident on bodycam.  *Id.* at ¶ 195.  On May 10, 2019, Officer Bove

informed the district attorney's office that, during the incident, Jennifer Crespo stated: "You're not arresting my father. You're trespassing. Get off of him." *Id.* at ¶ 196. Ultimately, Jennifer Crespo accepted an adjournment in contemplation of dismissal for the charges against her. *Id.* at ¶ 197. Amy Crespo was placed on probation until June 10, 2019. *Id.* at ¶ 198.

## STANDARD OF REVIEW

A court will deny a motion for summary judgment unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact if the evidence shows that "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, in each case construing the evidence in the light most favorable to the non-moving party." *Lichter v. Bur. of Accounts Control, Inc.*, 2021 U.S. Dist. LEXIS 50187, at *6 (S.D.N.Y. Mar. 17, 2021) (internal quotations omitted).

## POINT I[3]

### PLAINTIFFS' CLAIMS FOR UNLAWFUL ENTRY AND "UNLAWFUL SEIZURE INSIDE THE HOME" FAIL BECAUSE EXIGENT CIRCUMSTANCES JUSTIFIED THE ENTRY

Plaintiffs are not entitled to summary judgment on their unlawful entry claims because the officers entered the Crespo residence under exigent circumstances. An officer may enter an individual's home without a warrant or consent if exigent circumstances are present. *Pearson v. Callahan*, 555 U.S. 223, 223 (2009). Exigent circumstances are present if there is "an urgent need to render aid or take action." *Brown v. City of NY*, 2015 US Dist. LEXIS 11957, at *6-7

---

[3] Certain arguments advanced in this opposition are duplicative of those made in Defendants' memorandum of law in support of their motion for summary judgment. *See* ECF No. 38. Defendants reassert those duplicative arguments here to preserve the record.

5

(E.D.N.Y. Feb. 2, 2015) (quoting *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990).

"This is an 'objective test' that 'turns on [an] . . . examination of the totality of the circumstances

confronting law enforcement agents in the particular case.'" *Id.* at 7 (quoting *MacDonald*, 916

F.2d at 769).  "Courts have recognized the combustible nature of domestic disputes, and have

accorded great latitude to an officer's belief that warrantless entry was justified by exigent

circumstances when the officer had substantial reason to believe that one of the parties to the

dispute was in danger." *Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998).

Plaintiffs argue that the officers did not enter the Crespo residence under exigent

circumstances for a host of reasons that overlook the obvious danger that Angel Crespo posed to

Mayra Crespo at the residence that they both shared.  *See* Memorandum of Law in Support of

Plaintiffs' Motion for Summary Judgment, ECF No. 42, (hereinafter "Pls'. Mot.") at 10-15.  The

officers reasonably believed Mayra Crespo would be in immediate danger if they left the scene

because Mayra had visible swelling under her right eye, bruising on her right shoulder, and hair

on her shirt and stated that Angel had punched her in the eye and shoulder and dragged her by

the hair.  The officers also reasonably believed that the situation was particularly volatile because

Angel Crespo had previously threatened to commit suicide if Mayra left him.

Plaintiffs claim there was no immediate need to take action because Angel Crespo had

willingly spoken to the officers and did not appear violent or evasive, Mayra did not want the

officers to arrest Angel or for her daughters to see Angel get arrested, "the dispute between Mr.

and Ms. Crespo had ended" by the time the officers arrived, and nobody in the Crespo residence

needed immediate medical assistance.  Pls'. Mot. at 11.  None of these reasons are persuasive.

As an initial matter, Plaintiffs' characterization of Angel Crespo's demeanor is inaccurate.  He

*did* appear evasive because he refused to present his identification and, more importantly, he lied

to the police when he denied hitting Mayra Crespo.  That lie coupled with his statement that he had "just pushed her around" suggested that Angel Crespo did understand the gravity of his actions and that he might therefore repeat them.  Furthermore, it is immaterial that Mayra Crespo did not want the officers to arrest Angel or for her daughters to see Angel's arrest.  Those facts do not negate Mayra's statements or her visible injuries and are therefore irrelevant to whether exigent circumstances existed.  This is especially true given the immense familial pressure that domestic violence victims face to not cooperate with the police.  *See Torres v. City of NY*, No. 20-CV-4007 (BMC), 2022 U.S. Dist. LEXIS 58572, at *11-12 (E.D.N.Y. Mar. 30, 2022).

In their moving papers, Plaintiffs rely heavily on the fact that Angel Crespo was not actively harming Mayra Crespo by the time the officers arrived.  *See* Pls'. Mot. at 11-13. However, it was reasonable to believe that Angel would assault Mayra Crespo again if the officers left the scene because Mayra had bruising on her face and shoulder and told the officers that Angel had harmed her before.  Mayra also informed the officers that Angel had left the residence once and returned prior to the officers' arrival, suggesting that it would be reasonable to assume that the situation had not resolved simply because Angel was inside the shared residence for the moment.  Furthermore, other courts have found exigent circumstances where the victim was separated from the perpetrator by the time the police arrived.  *See e.g. People v. Frye*, 18 Cal. 4th 894, 989-990, 77 Cal. Rptr. 2d 25, 77-78, 959 P.2d 183, 235-236 (1998); *People v. Higgins*, 26 Cal. App. 4th 247, 254, 31 Cal. Rptr. 2d 516, 519-520 (1994); *People v. Wilkins*, 14 Cal. App. 4th 761, 772, 17 Cal. Rptr. 2d 743, 749 (1993); *State v. Rexrode*, 243 W. Va. 302, 313-314, 844 SE2d 73, 84-85 (2020); *Warren v. Uribe*, 2013 U.S. Dist. LEXIS 76311, No. 2:10-CV-2120 (MCE) (EFB), at *27 (E.D. Cal. May 30, 2013).  For example, in *People v. Frye*, the California Supreme Court found exigent circumstances where the officers responded to

7

a domestic violence call and the victim—who had a "bruised and swollen face"—stepped outside the defendant's apartment and indicated that the defendant, who was still inside, had injured her. *Frye*, 18 Cal. 4th 894, 989-990.  The court found that the officers "could reasonably have concluded that immediate action was necessary" because if they had "left the scene to obtain a warrant, there was a significant risk that [the victim] would have suffered additional harm." *Id.* at 889.

In *People v. Higgins*, the Fourth Appellate District of the California Court of Appeals also found exigent circumstances where the victim met the police outside of the home.  *See Higgins*, 26 Cal. App. 4th at 254.  There, the officers responded to an anonymous domestic disturbance report involving "a man shoving a woman around."  *Id* at 249.  The victim—who had "a 'little red mark' under one eye and slight darkness under both eyes"—nervously answered the door to the defendant's apartment and claimed she had injured herself by falling down the stairs.  *Id.* at 250.  The court found exigent circumstances, reasoning that "the securing of a warrant would necessarily have occasioned some delay and during this period the victim would have been vulnerable to further risk of physical harm."  *Id.* at 254.  The Court also explained that "[t]he officers had no right to detain [the victim] while seeking a warrant."  *Id.*

Here, like in *Higgins* and *Frye*, it was impractical for the officers to obtain a warrant because, to do so, they would had to have either endangered Mayra Crespo or detained her outside of her own home.  If all four officers had left to obtain a warrant, they would have put Mayra Crespo in danger by leaving her alone with Angel Crespo, who had punched her in the face and shoulder and dragged her by the hair.  Alternatively, if one or more officers remained with Mayra Crespo while the others sought a warrant, the remaining officers would have had to

8

detain Mayra outside her own home.  This would have been untenable because, as the court in *Higgins* observed, "[t]he officers had no right to detain [the victim] while seeking a warrant." *Id.*

Though Plaintiffs argue that *Penree v. City of Utica*, 694 F. App'x 30 (2d Cir. 2017) controls, the circumstances in this case were far more exigent than those in *Penree*.  Pls'. Mot. at 12-15.  In *Penree*, the plaintiff reported to the police that Danielle Williams—the mother of his children—had attacked him at his home.  *Penree v. City of Utica*, No. 6:13-cv-01323 (MAD/ATB), 2016 U.S. Dist. LEXIS 27668, at *5 (N.D.N.Y. Mar. 4, 2016).  Notably, Ms. Williams did not live at the residence.  *Id.* at 9.  When the officers arrived, Williams, who was standing on the sidewalk outside the house, stated that the plaintiff had "pushed her out the front door which led to her falling down the stairs." *Id.* at 6.  The officers then spoke to the plaintiff, who refused to let them into his home but agreed, at the officers' request, to bring his children outside so the officers could verify they were unharmed.  *Id.* at 6-7.  For the next thirty to forty-five minutes, the officers prepared a complaint report, which Williams signed.  *Id.* at 8. However, Williams "was vague as to her own violent behavior," never represented that she lived in the plaintiff's residence, and had previously made numerous unfounded allegations against the plaintiff, which the officers knew of at the time of the incident.  *Id.* at 9 and 30.  Nevertheless, approximately one hour after they responded to the scene, the officers entered the plaintiff's home and arrested him for second degree harassment, a violation-level offense.  *Id.* at 48-49. The district court declined to find exigent circumstances because, among other things, the officers had not even demonstrated probable cause to arrest and only suspected the plaintiff of committing a violation, which is a minor offense.  *Id.* at 40-41.  The Second Circuit affirmed, finding there were no exigent circumstances because, among other things, Williams was outside

the home when the officers arrived and "the children were not in danger or in need of aid." *Penree*, 694 F. App'x at 33.

Plaintiffs argue that *Penree* controls because in that case, like in this one, the perpetrator did not assault the victim while the police were present, the officers spoke to the victim and the perpetrator individually, and nobody in the household required immediate medical assistance. Pls'. Mot. at 13.  However, the salient factor in *Penree* was that the officers lacked probable cause to believe the plaintiff had harmed Williams *at all*, not simply that he had stopped harming her by the time they arrived.  Clearly, there could not have been an exigency if there was no assault in the first place.  Here, like in *Higgins* and *Frye* and unlike in *Penree*, the officers had ample probable cause to arrest Angel Crespo based on Mayra's statements and the visible injuries to her eye and shoulder.  Whereas *Penree* involved a violation, the crime at issue in this case was third degree assault, an A misdemeanor.  Because the officers had ample reason to believe Angel Crespo had committed a serious crime against Mayra Crespo, they had a much more compelling reason to believe she would be in danger if they had delayed Angel's arrest.

Whereas the officers in *Penree* could easily have obtained a warrant, it would have been impractical for the officers in this case to have obtained one.  The officers in *Penree* could easily have obtained a warrant because Danielle Williams did not live in the same house as the plaintiff, who had called the police to have Williams removed from his property.  By contrast, in this case, like in *Higgins* and *Frye*, the victim *did* live in the same house as the perpetrator, which means that the officers would had to have prevented her from reentering her own home in order to obtain a warrant.  Thus, unlike in *Penree*, it would have been impractical for the officers in this case to obtain a warrant.

10

According to Plaintiffs, it is immaterial that Mayra Crespo lived with her assailant because both Angel and Mayra Crespo had offered to leave the house and it is "pure speculation" that "Mr. Crespo might (sic) come back and harm (sic) Ms. Crespo if [the officers] left…." Pls'. Mot. at 13. However, it is hardly speculative that Angel Crespo would return to his own home, which he had already left and reentered before the police arrived. Nor is it "pure speculation" that he would harm Mayra Crespo if he returned, given that he punched her and dragged her by the hair, lied to the police about his actions, and had harmed Mayra in the past. Likewise, it was reasonable to believe that Mayra Crespo would return to her own home, where Angel Crespo would likely harm her again. Accordingly, there is at least a genuine issue of material fact as to whether the officers entered the Crespo residence under exigent circumstances. Additionally, Defendants are entitled to qualified immunity for the reasons stated in Point II, *infra*.

### POINT II

### THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' FEDERAL CLAIMS

The Court should deny summary judgment on all of Plaintiffs' federal claims because Defendants are, at a minimum, entitled to qualified immunity. Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Brown*, 2015 U.S. Dist. LEXIS 11957, at *15 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "A police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of N.Y.*, 478 F3d 76, 87 (2d Cir. 2007) (internal quotations and citations omitted). An action is objectively reasonable if officers of reasonable competence could disagree about whether it was constitutional. *Id.* at *20. A right is not clearly established

11

unless, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations omitted).

Though there need not be a case directly on point for a law to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* at 12 (quoting *al-Kidd*, 563 U.S. at 742). "Such specificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine…will apply to the factual situation the officer confronts.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

In *Brosseau v. Haughen*, the "Ninth Circuit denied qualified immunity on the ground that the officer had violated the clearly established rule, set forth in *Tennessee* v. *Garner*, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), that deadly force is only permissible where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* at 12 (internal quotations omitted). The Supreme Court reversed, explaining that the correct inquiry "was whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the 'situation [she] confronted: whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight.'" *Id.* at 13 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004)) (internal quotations omitted).

Plaintiffs argue that the defendant officers are not entitled to qualified immunity because the Second Circuit stated in *Penree* that "[t]he law prohibiting warrantless entry into a home without exigent circumstances was and continues to be clearly established law." Pls.' Mot. at 15. However, this argument directly contradicts *Brosseau* and misconstrues *Penree's* holding. Just as the relevant question in *Brosseau* was not whether the general standard for using deadly force was clearly established, the relevant question in this case is not whether the general standard for warrantless entries was clearly established. Rather, the correct inquiry is whether it was clearly established that an officer would violate the Fourth Amendment by entering a home without a warrant under the circumstances of *this* case, where a victim had recently been punched in the face and dragged by the hair by an individual who was significantly larger than her, the victim lived with the perpetrator, and the perpetrator was inside their shared house.

*Penree* did not hold to the contrary. In *Penree*, the defendants argued that the applicable law was "not clearly established because an alleged domestic abuser's Fourth Amendment rights conflict with the rights of domestic violence victims after [the Second Circuit's] decision in *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 437 (2d Cir. 2009)." *Penree*, 694 F. App'x at 32. The Second Circuit rejected that argument, finding that their decision in *Okin* did not undercut the general rule that an officer cannot enter a home without a warrant, consent, or exigent circumstances. *Id.* Therefore, when *Penree* held that "[t]he law prohibiting warrantless entry into a home without exigent circumstances was and continues to be clearly established law," it was rejecting the specific argument raised by the defendants in that case, not prescribing the level of generality to frame all qualified immunity inquiries arising from warrantless entries.

*Penree's* qualified immunity analysis is inapposite here because Defendants in this case have advanced completely different arguments than the defendants in *Penree* did. Whereas the

defendants in *Penree* argued that the general standard for warrantless entries was not clearly established due to an ambiguity in Second Circuit precedent, Defendants in this case do not question that general standard.   Rather, Defendants argue that their entry was objectively reasonable and that it was not clearly established under the circumstances of *this* case that they had to obtain an arrest warrant before entering the house.   It was objectively reasonable for the defendants to believe that the entry was constitutional because, as argued in Point I, Mayra Crespo would likely have been in immediate danger if they had left the scene.   Furthermore, no binding precedent from the Supreme Court or the Second Circuit in existence at the time of the incident clearly established that it would be unconstitutional to enter the home under these circumstances.   *Penree* does not control for the reasons stated above.   Additionally, the existing precedent at the time of the incident did not place the "constitutional question beyond debate" because cases in other jurisdictions—such as *Higgins* and *Frye*—found exigent circumstances in scenarios that are nearly identical to the instant case.   Because the entry was objectively reasonable and it was not clearly established that a warrantless entry would be unconstitutional under these circumstances, the Court should grant qualified immunity on Plaintiffs' entry claim.

Because the Court should grant qualified immunity on Plaintiffs' unlawful entry claim, it should also grant qualified immunity on Plaintiffs' remaining claims for false arrest, "unreasonable seizure in the home," malicious prosecution, fabrication of evidence, and failure to intervene, which are all premised on the unlawfulness of the entry.   Additionally, there was at least arguable probable cause to arrest Jennifer and Amy Crespo for OGA and resisting arrest because, as argued below, they blocked, pushed, and pulled the officers during Angel Crespo's arrest.   Accordingly, the Court should grant qualified immunity on all Plaintiffs' federal claims.

14

### POINT III

### THE COURT SHOULD DENY SUMMARY JUDGMENT ON PLAINTIFFS' REMAINING FEDERAL CLAIMS BECAUSE THE ENTRY WAS LAWFUL AND NO OFFICER INITIATED A PROSECUTION OR FABRICATED EVIDENCE

Plaintiffs argue that the Court should grant summary judgment on their remaining false arrest, malicious prosecution, and fair trial claims because the officers unlawfully entered the Crespo residence. Pls'. Mot. at 7-8. This argument is unavailing for three reasons. First, as explained above, exigent circumstances justified the entry. Second, Jennifer and Amy Crespo cannot prevail on their malicious prosecution claims because neither plaintiff has presented evidence that Officers Bove or Cullen initiated prosecutions against them. Finally, Jennifer and Amy Crespo cannot prevail on their fair trial claims merely by showing that the entry was unlawful. Rather, they must show that Officers Bove and Cullen fabricated evidence against them, which they have utterly failed to do.

### A) There was probable cause for Jennifer and Amy Crespo's arrests.

Probable cause is a complete defense to a false arrest claim. *Guan v. City of NY*, 37 F.4th 797, 809 (2d Cir. 2022). An officer has probable cause where he has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Calamia v. City of New York*, 879 F.2d 1025, 1032 (2d Cir. 1989). Under NY Penal Law § 205.30, "[a] person is guilty of resisting arrest when [s]he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of [her]self or another person." Similarly, under NY Penal Law § 195.05, one commits OGA where he or she "attempts to prevent a public servant from performing an official function, by means of…physical force." NY Penal Law § 195.05. A perpetrator need only use "minimal" physical force to obstruct an official function. *Basinski v.*

15

*City of N.Y.*, 706 F. App'x 693, 698 (2d Cir. 2017).  A suspect uses sufficient force where she "intrude[s] [her]self into, or get[s] in the way of, an ongoing police activity." *Kass v. City of NY*, 864 F.3d 200, 210 (2d Cir 2017) (citing *Matter of Kendell R.*, 71 AD3d 553, 554 (1st Dept. 2010) (internal quotations omitted).  Where a resisting arrest or OGA charge is premised on interference with another person's arrest, the underlying arrest must be lawful.  *Thompson v. Clark*, 2018 U.S. Dist. LEXIS 105225, No. 14-CV-7349, at *37-38 (EDNY June 11, 2018).

Here, the officers had probable cause to arrest Amy and Jennifer Crespo for resisting arrest and OGA because they physically interfered with Angel Crespo's lawful arrest.  Angel Crespo's arrest was lawful because the officers had probable cause to arrest him based on Mayra Crespo's statements and the bruising under her right eye and shoulder and, for the reasons stated above, their entry was justified by exigent circumstances.  Consequently, the officers also had probable cause to arrest Jennifer and Amy Crespo for resisting arrest and OGA because they physically interfered with Angel's lawful arrest.  Specifically, Jennifer Crespo "g[o]t in the way of, an ongoing police activity" when she blocked the officers' path to Angel Crespo by standing directly in front of him with her arms spread out and when she pushed Officer Iearaci backwards, away from Angel Crespo.  Jennifer also resisted arrest when she flailed her arms, twisted her body, and pushed Officer Bove as she attempted to handcuff her.  Likewise, Amy Crespo committed OGA and resisting arrest when she pushed and pulled Officers Bove and Pirozzi as they attempted to arrest Angel Crespo.  Because Jennifer and Amy Crespo tried to prevent Angel Crespo's lawful arrest, the Court must deny summary judgment on their false arrest claims.

**B)** **Jennifer and Amy Crespo cannot prevail on their malicious prosecution claims.**

To prevail on a malicious prosecution claim, a plaintiff must show, among other things, that the defendant maliciously initiated or continued a criminal prosecution against her without

probable cause.  *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).  Probable cause is a complete defense to a malicious prosecution claim "unless plaintiff can demonstrate that at some point subsequent to arrest, additional facts came to light that negated probable cause." *Smith v. City of New York*, No. 04 Civ. 3286, 2010 U.S. Dist. LEXIS 88774, 2010 WL 3397683, at *9 (S.D.N.Y. Aug. 27, 2010) (quoting *Dukes v. City of New York*, 879 F. Supp. 335, 342 (S.D.N.Y. 1995)).  Probable cause dissipates where "the groundless nature of the charges [are] made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

To initiate a prosecution, an officer must "'play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Manganiello v. City of New York*, 612 F3d 149, 163 (2d Cir 2010) (alteration omitted) (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)).  Courts have found that a defendant plays an active role where he files charges, completes an affidavit, signs a felony complaint, forwards false information to a prosecutor, or testifies at a grand jury. *See Dufort v. City of New York*, 874 F3d 338, 353 (2d Cir. 2017); *see also Isaac v. City of New York*, No. 16-CV-4729 (KAM), 2018 U.S. Dist. LEXIS 132995, at *17-20 (E.D.N.Y. Aug. 6, 2018).  A plaintiff may also initiate a prosecution where he submits true information to a prosecutor "without disclosing evidence that would negate probable cause." *Roman v. City of Mount Vernon*, No. 21-CV-2214 (KMK), 2022 U.S. Dist. LEXIS 128074, at *32-33 (S.D.N.Y. July 19, 2022) (internal quotations omitted).

Here, the Court should deny summary judgment on Jennifer and Amy Crespo's malicious prosecution claims because there was probable cause to prosecute them, and Officers Bove and Cullen did not act maliciously, and Plaintiffs have not submitted evidence that Officers Bove or Cullen initiated prosecutions against them.  The officers had probable cause to arrest Jennifer

and Amy Crespo for the reasons stated in Point III(A) and there is no evidence that "additional facts came to light that negated probable cause" between their respective arrests and prosecutions.  Jennifer and Amy Crespo also cannot show that Officers Cullen or Bove acted maliciously because there is no evidence that either officer acted with a "wrong or improper motive."  Rather, the bodycam footage shows that Jennifer and Amy Crespo pushed, pulled, and grabbed the officers while they attempted to lawfully arrest Angel Crespo, who had punched his wife in the face and shoulder and dragged her by the hair earlier that day.

Finally, Jennifer and Amy Crespo have not presented any evidence that Officers Bove or Cullen initiated prosecutions against either of them.  For example, they have not presented any evidence that Officers Bove or Cullen filed charges, completed affidavits, signed felony complaints, or testified at grand jury proceedings.  The Court should not consider the criminal court complaint against Jennifer Crespo—which was signed by Officer Bove and was submitted as an exhibit to Defendants' motion for summary judgment—because  Plaintiffs did not submit it as an exhibit to their own motion or reference Defendants' exhibit in their Local Rule 56.1 statement.  *See Lichter*, 2021 U.S. Dist. LEXIS 50187, at \*6.  Though Plaintiffs cite case law stating that one may initiate a prosecution by withholding from prosecutors information that negates probable cause, they do not argue that Officers Bove or Cullen actually withheld any such information.  Because Plaintiffs have not properly raised that argument, the Court should not consider it.  *See Hoti Enters., L.P. v. GECMC 2007 C-1 Burnett St., LLC ( In re Hoti Enters., L.P. )*, No. 12 Civ. 5341 (CS), 2012 U.S. Dist. LEXIS 182395, at \*8 (S.D.N.Y. Dec. 27, 2012) (reasoning that "[i]t is plainly not an abuse of discretion for a court not to consider an argument not made to it.").  Even if the Court were to consider that argument, the Court should deny it for the reasons stated in Point III(C), *infra*.

18

**C)** **Jennifer and Amy Crespo are not entitled to summary judgment on their fair trial claims because no officer fabricated evidence against either of them.**

To prevail on a denial of the right to a fair trial claim, a plaintiff must show that the defendants created false information that was likely to influence a jury's verdict and forwarded that information to prosecutors. *Ricciuti v. N.Y. City Tr. Auth.*, 124 F3d 123, 130 (2d Cir. 1997). A plaintiff may meet his burden by showing that an officer swore out a false criminal court complaint or drafted an arrest report containing false allegations and forwarded it to prosecutors. *See Garnett v. Undercover Officer C0039*, No. 1:13-cv-7083-GHW, 2015 U.S. Dist. LEXIS 45232, at *19-25 (S.D.N.Y. Apr. 6, 2015) (aff'd at *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 275 (2d Cir. 2016)).  "Information may be 'false' if material omissions render an otherwise true statement false." *Morse v. Fusto*, 804 F3d 538, 548 (2d Cir. 2015).  For example, in *Morse v. Fusto*, a prosecutor falsified evidence by, among other things, intentionally omitting the "tooth number" field in a spreadsheet presented to a grand jury, falsely suggesting that the defendant—a dentist—had repeatedly billed Medicaid for the same procedure. *Id.* at 543.

By contrast, one does not falsify information where he merely omits potentially exculpatory information.  *See Anilao v. Spota*, 27 F.4th 855, 872 (2d Cir. 2022).  For example, in *Anilao*, the Suffolk County District Attorney's Office charged ten nurses with endangerment after they resigned from a nursing home with minimal notice over a contract dispute. *Id.* at 861. When presenting the charges to the grand jury, the prosecutor omitted the facts that the New York State Department of Education ("DOE") had found that the nurses did not abandon the patients, the Nassau County Supreme Court declined to enjoin the nurses from speaking to others about resigning, and the Suffolk County Police Department refused to investigate the nursing home's complaint against the nurses.  *Id.*  The Second Circuit found that the prosecutor had not presented false information to the grand jury by omitting those facts because, unlike the

19

prosecutor in *Morse*—who "affirmative[ly] 'manipulat[ed] [ ] data to create false or misleading documents'"—the prosecutor in *Anilao* had merely failed to disclose "potentially exculpatory evidence to the grand jury." *Id.* at n. 12.

Here, the Court should deny Jennifer and Amy Crespo's motion for summary judgment on their fair trial claims against Officers Bove and Cullen because they have not presented any evidence that either officer fabricated information. In their moving papers, Jennifer and Amy Crespo argue that Officers Bove and Cullen denied their fair trial rights by drafting paperwork accusing them of resisting arrest and committing OGA without probable cause to believe they committed those offenses. Pls'. Mot. at 20. In making this argument, Plaintiffs confuse fair trial claims—which arise under the Fourteenth Amendment's Due Process Clause—with malicious prosecution claims—which arise under the Fourth Amendment. *See Ricciuti*, 124 F.3d 123 at 130. Whereas the absence of probable cause is an element of malicious prosecution, it is irrelevant to fair trial claims. *See id.* Because Jennifer and Amy Crespo merely argue that their prosecutions were initiated without probable cause and do not identify any allegedly fabricated evidence, the Court should deny summary judgment on their fair trial claims.

Even if the Court were to consider arguments that Plaintiffs have not made, which it should decline to do, the evidence shows that Officers Bove and Cullen did not fabricate any information. For the reasons stated above, the Court should not consider any statements made in the charging instrument signed by Officer Bove, which Plaintiffs did not submit as an exhibit to their cross-motion for summary judgment. The statements made in Jennifer and Amy Crespo's arrest reports—the only arrest paperwork submitted with Plaintiffs' cross-motion—are all true. For example, bodycam footage corroborates the allegations that Jennifer and Amy Crespo both pushed and pulled officers as they were attempting to arrest Angel Crespo and that Jennifer

Crespo flailed her arms and pushed Officer Bove when Officer Bove attempted to handcuff her. In fact, Amy Crespo admitted in her probation records that both she and Jennifer Crespo pushed the officers while they were trying to arrest Angel Crespo.

Plaintiffs have not argued that Officers Bove or Cullen fabricated information by omitting the circumstances of the entry and the Court should therefore not consider such an argument when ruling on Plaintiffs' cross-motion for summary judgment. *See generally* Pls'. Mot. However, even if the Court does consider that argument, it should reject it for three reasons. First, for the reasons stated in Point I, the entry was lawful. Second, Officers Cullen and Bove did not withhold the circumstances of the entry. Both arrest reports stated that the arrest took place *inside* 14 Mercer Place and noted the existence of bodycam footage. Furthermore Officer Bove submitted a Body Worn Camera Worksheet to the Richmond County District Attorney's Office, which noted that footage of the incident was captured by multiple officers. Because the entire entry was captured on bodycam and Officers Bove and Cullen both informed prosecutors that the footage existed, Plaintiffs cannot plausibly argue that either officer intentionally withheld evidence of the entry. Additionally, Officer Bove informed the district attorney's office that Jennifer Crespo accused her of trespassing, which she obviously would not have done if she were trying to hide her allegedly unlawful entry from the prosecution.

Finally, this case is far more analogous to *Anilao* than to *Morse*. Whereas the prosecutor in *Morse* intentionally altered spreadsheet fields to misrepresent the dentist's actions, the officers in this case did not manipulate any data and affirmatively provided evidence related to the entry. Furthermore, in *Morse*, the omission of the "tooth number" field changed an otherwise true statement—that the dentist had submitted multiple billing entries for *one patient*—to a false statement—that the dentist had billed Medicare multiple times for *one procedure*. Here, by

21

contrast, the circumstances of the entry do not make it any more or less true that Jennifer and Amy Crespo took the *actions* they were accused of—pushing and pulling the officers while they were arresting Angel Crespo and, with respect to Jennifer, pushing Officer Bove and flailing her arms while being handcuffed.  Therefore, like the DOE finding, the court decision, and the police inaction in *Anilao*, the circumstances of the entry in this case are potentially exculpatory, but do not affect the truth of Officer Bove's or Officer Cullen's allegations.  Because the entry was lawful and there is no evidence that Officers Bove or Cullen falsified any information, the Court must deny summary judgment on Jennifer and Amy Crespo's fair trial claims.

**POINT IV**

**PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT
ON THEIR FAILURE TO INTERVENE CLAIMS**

To prevail on a failure to intervene claim, a plaintiff must show that the defendant officer had a realistic opportunity to prevent the alleged constitutional violation, that a reasonable person would know the plaintiff's constitutional rights were being violated, and that the officer did not take reasonable steps to stop the violation.  *Debellis v. Soloman*, No. 19-CV-8730 (JMF), 2022 U.S. Dist. LEXIS 56021, at *12 (S.D.N.Y. Mar. 28, 2022).  An officer does not have a realistic opportunity to intervene if he is absent during the alleged violation.  *See Perez v. City of NY*, 2022 U.S. Dist. LEXIS 166418, at *27-28 (S.D.N.Y. Sep. 14, 2022).  A plaintiff cannot prevail on a failure to intervene claim unless he can demonstrate an underlying constitutional violation.  *Goldberg v. City of NY*, 2021 U.S. Dist. LEXIS 188674, at *16 (S.D.N.Y. Sep. 30, 2021).

Though Plaintiffs claim that every officer failed to intervene in every alleged constitutional violation, they only seek summary judgment on their failure to intervene claims stemming from Angel, Jennifer, and Amy Crespo's arrests and Amy and Jennifer Crespo's prosecutions.  Pls'. Mot. at 20-22.  Plaintiffs cannot prevail on any of these claims because, for

22

the reasons stated above, none of the defendant officers violated their constitutional rights. Furthermore, Jennifer and Amy Crespo have not shown that Officers Pirozzi and Ieraci had a realistic opportunity to intervene in the circumstances underlying their malicious prosecution and fair trial claims because there is no evidence that either officer was present when Officers Cullen and Bove drafted their respective arrest reports.  Plaintiffs argue that Officers Ieraci and Bove failed to intervene in their prosecutions because they did not inform Sergeant Fenko that their arrests were unlawful.  *Id.* at 21.  However, Plaintiffs did not submit any evidence regarding what, if any, conversations Officers Ieraci or Pirozzi had with Sergeant Fenko.  Therefore, the Court should disregard Plaintiffs' contention that Officers Ieraci and Pirozzi failed to intervene in their prosecutions.   Because Plaintiffs cannot demonstrate an underlying constitutional violation or show that Officers Ieraci or Pirozzi had a realistic opportunity to intervene, the Court should deny summary judgment on Plaintiffs' failure to intervene claims.

## POINT V

### THE COURT SHOULD DENY SUMMARY JUDGMENT ON PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS

Plaintiffs are not entitled to summary judgment on their state constitutional claims.  "No explicit constitutional or statutory authority sanctions a private right of action for violations of the New York State Constitution."  *Wahad v. F.B.I.*, 994 F. Supp. 237, 238 (S.D.N.Y. 1998).  A plaintiff does not have an implied right of action under the State Constitution if he has an adequate alternative remedy under § 1983 or state common law.  *Allen v. Antal*, 2014 U.S. Dist. LEXIS 79031, at *28 (S.D.N.Y. Mar. 13, 2014).  The implied right of action recognized by the New York State Court of Appeals is a "'narrow remedy' available only when 'necessary to effectuate the purposes of the State constitutional protections [that the] plaintiff invokes' or 'appropriate to ensure full realization of [the plaintiff's] rights.'"  *Id.* quoting *Martinez v. City of*

23

*Schenectady*, 97 N.Y.2d 78, 83 (2001). Though § 1983 does not provide an adequate alternative remedy for *respondeat superior* claims, common law torts *can* provide such a remedy. *Id*. A plaintiff has an adequate alternative remedy at common law as long as an analogous tort exists, even if he did not assert that tort in his complaint. *See Lyles v. State*, 2 A.D.3d 694, 770 NYS2d 81, 82 (2003), *aff'd Lyles v. State*, 3 NY3d 396, 398 (2004) (holding that the plaintiff had an adequate alternative remedy because "the alleged wrongs could have been redressed by an alternative remedy, namely, timely interposed common-law tort claims for assault and battery, false imprisonment, and the intentional and negligent injury to his property."); *Spruill v. City of NY*, 2022 NY Slip. Op. 32648(U), *16 (Sup. Ct., N.Y. County 2022) (finding that the plaintiff's state constitutional claims were "redundant and precluded" because he "had the opportunity to plead alternative remedies to his New York State Constitutional Law claims…."); *Donas v. City of NY*, 2008 N.Y. Slip Op. 30241(U), *10 (Sup. Ct., N.Y. County 2008) (explaining that "[w]here there exist alternative statutory or common-law remedies, it has been held improper to find a State constitutional claim.").

Though Plaintiffs did not specify in the Amended Complaint which claims they intended to assert under Article I, §§ 6 and 12 of the New York State Constitution, they now appear to characterize those claims as false arrest, malicious prosecution, excessive force, and failure to intervene. Pls'. Mot. at 23. The Court should deny summary judgment on Plaintiffs false arrest and malicious prosecution claims under the State Constitution for the same reasons it should deny summary judgment on their analogous § 1983 claims. Additionally, Plaintiffs had adequate alternative remedies for their State Constitutional claims. Plaintiffs argue that they did not have adequate alternative remedies for their State Constitutional claims brought under a *respondeat* theory. *Id.* at 22-24. However, the common law torts of false imprisonment,

malicious prosecution, assault, and battery provided adequate alternative remedies for their respective false arrest, malicious prosecution, and excessive force claims under the New York State Constitution.  The fact that Plaintiffs chose not to plead those torts does not suggest that an implied right of action is "'appropriate to ensure full realization of [the plaintiff's] rights.'" *Martinez*, 97 N.Y.2d at 83.  In addition to the above torts, Plaintiffs' § 1983 claims for false arrest, malicious prosecution, and excessive force are adequate alternatives for their analogous State Constitutional claims against the officers.

The Court should also deny summary judgment on Plaintiffs' failure to intervene claim under the State Constitution because no such claim exists and, even if it did, they had adequate alternative remedies under § 1983 and at common law.  Plaintiffs do not cite any case law suggesting that a failure to intervene claim exists under the New York State Constitution, nor are Defendants aware of such law.  *See generally* Pls'. Mot.  Absent authority from State courts, Plaintiffs cannot recover unless this Court invents a failure to intervene claim under the State Constitution, which would invade the province of the State legislature and judiciary.  *See Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998).  Even if a failure to intervene claim did exist under the New York State Constitution, that claim would fail for the same reasons as Plaintiffs' § 1983 failure to intervene claims.  Furthermore, their § 1983 failure to intervene claims would be an adequate alternative remedy against the individual defendants. Though there is no common law failure to intervene claim, *see Ashanti v. New York City*, 2023 NYLJ LEXIS 95, *19 (Sup. Ct., N.Y. County 2023), common law claims for false imprisonment, malicious prosecution, assault, and battery provide adequate alternative *respondeat* remedies against the City.  If Plaintiffs had brought *respondeat* claims premised on those torts, they would have been able to recover for the same harm that they now seek to redress through the State Constitution.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants City of New York, Joseph Ieraci, Laurene Bove, Zachary Cullen, and Angelo Pirozzi respectfully request that the Court deny Plaintiffs' motion for summary judgment in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      February 28, 2023

                              **HON. SYLVIA O. HINDS-RADIX**
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants City of New York,*
                              *Joseph Ieraci, Angelo Pirozzi, Laurene*
                              *Bove, and Zachary Cullen*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2372

                      By:    /s/   James R. Murray       
                                  James R. Murray
                                  *Assistant Corporation Counsel*
                                  Special Federal Litigation Division

CC:    **<u>Via ECF</u>**
       *All counsel of record*

26